UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROGER REEVES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:21-cv-02114-MJD-RLY |
| | ) |
| GENESYS CLOUD SERVICES, INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant Genesys Cloud Services, Inc.'s Motion for Summary Judgment, [Dkt. 56], and Plaintiff Roger Reeves' Cross-Motion for Partial Summary Judgment, [Dkt. 62]. The motions have been fully briefed and the Court heard oral argument on the issue on April 22, 2022. For the reasons set forth below, Defendant is entitled to summary judgment. The Court therefore **GRANTS** Defendant's motion and **DENIES** Plaintiff's motion.

**I. Summary Judgment Standard**

The "put up or shut up" moment in litigation, *Goodman v. NSA, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010), summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. On a motion for summary judgment, the properly supported facts asserted by the non-moving party must be believed, and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). When the Court reviews cross-motions for summary judgment, as is the case

here, "'we construe all inferences in favor of the party against whom the motion under consideration is made.'" *Speciale v. Blue Cross & Blue Shield Ass'n*, 538 F.3d 615, 621 (7th Cir. 2008) (quoting *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004)).

A party who bears the burden of proof on an issue may not rest on his pleadings, but rather, must present evidence that demonstrates there is a genuine issue of material fact that requires a trial. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). The non-moving party must specifically identify the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001); *see Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017) ("'It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.'") (quoting *Liberles v. Cook Cnty.*, 709 F.2d 1122, 1126 (7th Cir. 1983)).

## II.  Background

Defendant Genesys Cloud Services, Inc., ("Genesys") is a Delaware corporation with its principal place of business in California. [Dkt. 1 at 2.] Genesys is focused on "cloud customer experience and contact center solutions;" it has an office in Indianapolis, Indiana. [Dkt. 56 at 1.] Plaintiff Roger Reeves ("Reeves") is a citizen of Indiana. [Dkt. 1 at 2.] Reeves filed his Complaint in the Marion County Superior Court on July 1, 2021; Genesys removed the case to this Court on July 27, 2021. [Dkt. 1.] Since the parties are citizens of different states and more than $75,000 is at stake, the Court has diversity jurisdiction over the matter.

Reeves "was an employee of Genesys primarily responsible for software sales" from December 2009 to April 2021, when he voluntarily resigned. [Dkt. 1-3 at 9; Dkt. 57-1 at 4.] His compensation at Genesys was comprised of approximately 50% base salary and 50% commission. [Dkt. 57-1 at 6] (Reeves deposition). There are three relevant documents concerning the calculation of commissions: the Genesys Worldwide 2020 Commission Plan General Terms and Conditions (the "General Plan"), [Dkt. 65]; the Genesys Worldwide 2020 Commission Plan Account Executive Commercial Supplemental Plan (the "Supplemental Plan"), [Dkt. 66]; and the 2020 Bookings Requirements & Scenarios (the "Scenarios"), [Dkt. 57-4], (together, the "Documents"). The relevant provisions of each Document are set forth below in the Discussion section.

### III.  Discussion

As Genesys evolved from using on-premise servers to cloud-based servers, a less-expensive interim step was created, in which customers could purchase a "license to subscription" software arrangement. In June 2020, Reeves was responsible for converting Ascension, an established Genesys customer, from an on-premise software platform to the interim subscription software arrangement (the "Ascension Transaction"). [Dkt. 63-3 at 14; Dkt. 57-1 at 11-12.] In his Complaint, Reeves asserts a breach of contract claim and a related wage statute claim, arguing that Genesys has underpaid him by at least $410,290.00 in commissions related to the Ascension Transaction. [Dkt. 1 at 11.] In short, Genesys deducted a "maintenance" payment from Reeves' commission total; Reeves claims that maintenance should not have been deducted pursuant to the Supplemental Plan, while Genesys asserts that doing so was proper pursuant to the Scenarios.

Genesys now moves for summary judgment on both claims on the grounds that the Documents are unambiguous and, pursuant to the relevant Documents, including the Scenarios, maintenance was appropriately deducted from Reeves' commission calculation. [Dkt. 56.] Reeves moves for partial summary judgment, asking the Court to find that the Documents are unambiguous in his favor and, pursuant to a provision in Section 5.1 of the Supplemental Plan, his commission should not have been reduced by the maintenance payment. [Dkt. 62.] Reeves concedes that, if the Scenarios applies to the Ascension Transaction, maintenance was properly deducted pursuant to the formula set forth therein. *See* [Dkt. 57-1 at 25] (Reeves deposition). Accordingly, the sole issue in dispute concerns which of the relevant Documents govern Reeves' commission from the Ascension Transaction.

### A. Applicable Law Regarding Contract Interpretation

The parties agree that Indiana law applies to the issue of whether the Scenarios applies to the Ascension Transaction.[1] When interpreting contracts under Indiana law, the Court's primary purpose is "to ascertain and give effect to the parties' mutual intent" at the time they wrote the agreement. *Ecorp, Inc. v. Rooksby*, 746 N.E.2d 128, 131 (Ind. Ct. App. 2001) (citing *Hutchinson, Shockey, Erley & Co. v. Evansville-Vanderburgh Cnty. Bldg. Auth.*, 644 N.E.2d 1228, 1231 (Ind. 1994)). Construing the terms of a written contract "involves a pure question of law." *Whitaker v. Brunner*, 814 N.E.2d 288, 293 (Ind. Ct. App. 2004). Importantly, a contract is to be read as a

---

[1] The parties briefed the issues pursuant to Indiana law. However, the General Plan provides that it "shall be construed, administered and enforced in accordance with the laws of the State of California and other applicable mandatory local laws in the relevant jurisdiction." [Dkt. 65 at 3.] On May 2, 2022, the parties jointly submitted that "California law is consistent with Indiana law on contract interpretation points advocated by the parties at summary judgment." [Dkt. 84.] *See Gilkyson v. Disney Enterprises, Inc.*, 66 Cal. App. 5th 900, 915-16 (Cal. Ct. App. 2021); *Joseph v. City of Atwater*, 74 Cal. App. 5th 974, 982 (Cal. Ct. App. 2022).

whole and its language should be construed "so as not to render any words, phrases, or terms ineffective or meaningless." *Id.* at 294.

At the outset, the Court "must determine whether the language of the contract is ambiguous" because "'[t]he unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts.'" *Id.* at 293 (quoting *Estate of Penzenik v. Penz Prods., Inc.*, 800 N.E.2d 1007, 1010 (Ind. Ct. App. 2003)). "If the language of the instrument is unambiguous, the parties' intent will be determined from the four corners of the contract." *Id.* at 293-94; *see Ecorp*, 746 N.E.2d at 131 ("Absent ambiguity, the terms of a contract will be given their plain and ordinary meaning.") (citation omitted). Conversely, if the language is ambiguous, "its meaning must be determined by examining extrinsic evidence and its construction is a matter for the fact-finder." *Whitaker*, 814 N.E.2d at 294 (citing *Estate of Penzenik*, 800 N.E.2d at 1007); *Ecorp*, 746 N.E.2d at 131.

### B. The Documents Are Unambiguous

The Court must first determine whether the Documents are ambiguous. An ambiguity exists only where "reasonable people could come to different conclusions about the contract's meaning." *Ecorp*, 746 N.E.2d at 131 (citing *Ruff v. Charter Behavioral Health Sys. of Northwest Ind., Inc.*, 699 N.E.2d 1171, 1176 (Ind. Ct. App. 1998)). Critically, "[t]he terms of a contract are not considered ambiguous because the parties dispute the proper interpretation of the terms." *Id.*

The General Plan, along with the Supplemental Plan, set forth the commission program for Genesys employees, including Reeves, during the relevant time period. [Dkt. 65 at 2.] In the event that a rule within the General Plan conflicts with the Supplemental Plan, the Supplemental Plan takes precedence. *See* [Dkt. 65 at 3] (General Plan §4.0); [Dkt. 66 at 3] (Supplemental Plan §1.0); *see also* [Dkt. 65 at 11] (General Plan §16.1 stating that an employee's Supplemental Plan

5

"will specify how his Commissions are calculated"). The Supplemental Plan states that "[t]he amount of Revenue that is converted to Commission Credit depends on the Product or Service in the Booking." [Dkt. 66 at 4] (Supplemental Plan §2.3.2). Section 15 of the General Plan provides specific definitions applicable to the Documents, including the following relevant terms:

> **"Booking"**: The recording of a Sale via a purchase order or service order in the Company's general ledger, or for Cloud Bookings, Professional Service Bookings and Genesys University Bookings, the submission of the necessary Sale documentation to Finance. The requirements for various Booking scenarios are outlined by Field Finance in the *Bookings Requirements & Scenarios* document posted to Genie 2.0. To the extent there is any dispute between a Participant and the Company concerning the terms of a Booking or whether a Booking has occurred, the WCC [Worldwide Compensation Committee] shall resolve such dispute in its reasonable discretion, such decision being final and binding.

[Dkt. 65 at 7.]

> **"Commission Credit"**: The amount credited to a Participant for measurement of his Payout Metrics, such as a Booking, pursuant to the terms of the Plan. To the extent there is any dispute between a Participant and the Company concerning the amount of Commission Credit, the WCC shall resolve such dispute in its reasonable discretion, such decision being final and binding.

[Dkt. 65 at 7-8.]

> **"First Year Maintenance Booking"** or **"FYM Booking"**: A Booking for the initial maintenance period sold with the respective Perpetual License Booking. "First Year" is used to indicate that Commission Credit is provided for the first year's maintenance value only. A Participant's Supplemental Plan and/or GAP [Goal Achievement Plan] may outline further Commission Credit rules by Product and Service.

[Dkt. 65 at 8.]

> **"On-Premise Subscription Booking"**: A Booking for premise-based subscription Products or Services that is assigned an Annual Contract Value.

[Dkt. 65 at 8.]

> **"Perpetual License Booking"**: A Booking for Product license sold on a perpetual basis.

[Dkt. 65 at 10.]

Reeves points to Section 5.1 of the Supplemental Plan in arguing, as follows, that the Documents are unambiguous in his favor:

> Section 5.1, entitled "On-Premise Subscription Bookings," of which the Ascension Sale is one, states unequivocally that: "The amount of Commission Credit for On-Premise Subscription Bookings will follow the definition of ACV provided in the General Plan." The definition of "ACV," . . . does not deduct the amount of "maintenance" payments made under the terms of the Ascension Sale from the "ACV."

[Dkt. 64 at 15-16] (footnote and citations omitted; emphasis in original). However, "[t]he meaning of a contract is to be determined from an examination of **all** of its provisions, not from a consideration of individual words, phrases, or even paragraphs read in isolation." *Dick Corp. v. Geiger*, 783 N.E.2d 368, 374 (Ind. Ct. App. 2003) (citing *Art Country Squire LLC v. Inland Mortgage Corp.*, 745 N.E.2d 885, 889 (Ind. Ct. App. 2001)) (emphasis added). And, importantly, **where a specific provision conflicts with a more general provision, the specific provision prevails**. *Peoples State Bank v. Benton Twp. of Monroe Cnty.*, 28 N.E.3d 317, 323 (Ind. Ct. App. 2015) (emphasis added).

Indeed, as Genesys highlights, Section 5.1 of the Supplemental Plan also states that "On-Premise Subscription Bookings must . . . [c]omply with the *Bookings Requirements & Scenarios* document published by Field Finance." [Dkt. 66 at 8] (emphasis in original). Moreover, Section 2.3.2.1 of the Supplemental Plan, titled "Commission Credit by Product and Service," provides that "Commission Credit for **existing customers renewing or transitioning to different Products and Services** than those previously contracted will be determined using the *Bookings Requirements & Scenarios* document posted to Genie 2.0." [Dkt. 66 at 4-5] (emphasis added). This is the most specific provision relevant to the Ascension Transaction.

Harmonizing these provisions, it is clear that the more general language Reeves points to within Section 5.1 of the Supplemental Plan is applicable to new customer bookings. Conversely,

where an existing customer seeks to transition to a different Genesys product or service, the more specific provisions set forth in the Scenarios govern the commission calculation. This makes sense considering that "[t]he amount of Revenue that is converted to Commission Credit depends on the Product or Service in the Booking." [Dkt. 66 at 4] (Supplemental Plan §2.3.2).

Ultimately, there is nothing ambiguous about the Documents or their provisions. Where a new customer buys an initial product or service, the Supplemental Plan directly applies; where an existing customer transitions to a different product or service, the Scenarios governs the commission calculation, as clearly dictated by Section 2.3.2.1 of the Supplemental Plan.

### C. The Documents' Plain Meaning Requires Summary Judgment for Genesys

Because the language of the Documents is unambiguous, "the parties' intent will be determined from the four corners of the contract." *Whitaker*, 814 N.E.2d at 293-94.

It is undisputed that Ascension was an existing Genesys customer at the time of the Ascension Transaction. [Dkt. 57-1 at 12] (Reeves deposition). Ascension was initially an "on-premise" customer; Reeves then converted Ascension to a "subscription" customer in June 2020. [Dkt. 57-1 at 11-12] (Reeves deposition). Accordingly, pursuant to Section 2.3.2.1 of the Supplemental Plan, the Ascension Transaction—in which an existing customer transitioned to a different product or service—was to be governed by the Scenarios. The Scenarios explicitly provides that first-year maintenance ("FYM" in the chart below) is to be subtracted from transactions involving License to Premise Subscriptions:

### Bookings Scenarios & Different Treatments (Cont'd)

| Scenario | Deal Size | CEV[1] | Sales Compensation Value and Quota Retired [2] |
|---|---|---|---|
| License to Premise Subscription | Subscription: $480k ACV - $200k FYM = $280k Subscription ACV | $280k ACV * 2.5 / 1.75 = $400k | $280k ACV * 2.5 / 1.75= $400k |

[Dkt. 57-4 at 3.]

8

It is undisputed that the Ascension Transaction was a "License to Premise Subscription." [Dkt. 57-1 at 24] (Reeves deposition). Therefore, by the plain language of the documents, Genesys properly deducted first-year maintenance from the Ascension Transaction according to the Scenarios. The parties confirmed during oral argument that there is no dispute that the formula from the Scenarios set forth above was correctly applied to the transaction at issue. Accordingly, Reeves is not entitled to further commission as a matter of law. Consequently, Genesys' Motion for Summary Judgment, [Dkt. 56], is **GRANTED**, and Reeves' Cross-Motion for Partial Summary Judgment, [Dkt. 62], is **DENIED**.

### IV.  Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment, [Dkt. 56], is **GRANTED**; Plaintiff's Cross-Motion for Partial Summary Judgment, [Dkt. 62], is **DENIED**.

SO ORDERED.

Dated:  9 MAY 2022

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on
all ECF-registered counsel of record via
email generated by the Court's ECF system.